# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| GERALD DAVIS, JR., Individually and on Behalf of All Others Similarly Situated, | Civil Action No. _____ |
| v. | COLLECTIVE ACTION (29 U.S.C. § 216(b)) |
| STEWARD ENERGY II, LLC. | CLASS ACTION (F.R.C.P. 23) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Plaintiff Gerald Davis, Jr. (Davis) brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et. seq.* ("NMMWA") against Defendant Steward Energy II, LLC. ("Steward").

2.      Davis and the other workers like him were regularly worked for Steward in excess of 40 hours each week.

3.      But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4.      Instead of paying overtime as required by the FLSA, Steward paid these workers a daily rate with no overtime pay and improperly classified them as independent contractors. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.      The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the events giving rise to the claims occurred in this district and division. Specifically, Davis worked for Steward in and around Lea County.

## THE PARTIES

8.      Davis worked exclusively for Steward as a Completions and Production Consultant from May 2018 through April 2020. Throughout his employment with Steward, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. His consent to be a party plaintiff is attached as Exhibit A.

9.      Davis brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Steward's day-rate system. Steward paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA. The class of similarly situated employees ("Putative Class Members") consists of:

> **All current and former oilfield workers employed by, or working on behalf of, Steward Energy II, LLC during the past three years who were classified as independent contractors and paid a day-rate.**

10.      Second, Davis represents a class of similarly situated workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23. The NMMWA Class is defined as:

> **All current and former oilfield workers employed by, or working on behalf of, Steward Energy II, LLC in New Mexico during the past three years who were classified as independent contractors and paid a day-rate.**

11.      Collectively, the FLSA Class Members and NMMWA Class Members are referred to as the "Putative Class Members."

- 2 -

12.     Steward Energy II, LLC is a foreign corporation doing business throughout Texas and New Mexico and may be served with process at its corporate headquarters at 3211 Internet Blvd., Suite 150, Frisco, Texas 75034 or wherever they may be found.

## COVERAGE UNDER THE FLSA

13.     For at least the past three years, Steward has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14.     For at least the past three years, Steward has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15.     For at least the past three years, Steward has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

16.     For at least the past three years, Davis and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

17.     Steward treated Davis (and indeed all its workers that it classified as independent contractors) as employees and uniformly dictated the pay practices to which Davis and its other employees (including its so-called "independent contractors") were subjected.

18.     Steward's misclassification of Davis as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

**FACTS**

19.     Steward Energy II, LLC is an oil and natural gas exploration and production company operating throughout the Permian Basin in Texas and New Mexico.[1]

20.     To complete its business objectives, Steward hires oilfield personnel to perform the necessary work.

21.     During the relevant time period Steward hired and fired, supervised and controlled, set pay, determined hours, and approved time sheets with respect to the Putative Class Members that performed work for them.

22.     Many of these individuals who worked for Steward as oilfield workers were paid on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work. Specifically, Steward classified its oilfield workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

23.     For example, Davis worked exclusively for Steward from May 2018 through April 2020 as a Completions and Production Consultant. Throughout his employment with Steward, he was classified as an independent contractor and paid on a day-rate basis.

24.     As a Completions and Production Consultant, Davis' primary job duties included ensuring that the completion of the well, and production following completion, was carried out

---

[1] *See* https://stewardenergy.net/ (last visited September 17, 2020).

according to Steward's specifications and well plan, as needed. Davis worked well in excess of 40 hours each week while employed by Steward.

25.     The work Davis performed was an essential party of Steward's core business.

26.     During Davis' employment with Steward while he was classified as an independent contractor, Steward exercised control over all aspects of his job. Steward did not require any substantial investment by Davis for him to perform the work required of him.

27.     Davis was not required to possess any unique or specialized skillset (other than that maintained by all other workers) to perform his job duties.

28.     Steward determined Davis' opportunity for profit and loss.

29.     Steward controlled all the significant or meaningful aspects of the job duties performed by Davis.

30.     Steward ordered the hours and locations Davis worked, tools used, and rates of pay received.

31.     Steward controlled all aspects of Davis' job activities by enforcing mandatory compliance with Steward's policies and procedures.

32.     No real investment was required of Davis to perform his job. Davis utilized equipment provided by Steward to perform his job duties.

33.     Davis did not provide the equipment he worked with on a daily basis.

34.     Steward made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Davis worked.

35.     Davis did not incur operating expenses like rent, payroll and marketing.

36.     Davis was economically dependent on Steward during his employment.

37.     Steward set Davis' rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Steward.

38.     Steward directly determined Davis' opportunity for profit and loss. Davis' earning opportunity was based on the number of days Steward scheduled him to work.

39.     Very little skill, training, or initiative was required of Davis to perform his job duties.

40.     Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Steward.

41.     Virtually every job function was pre-determined by Steward, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

42.     The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

43.     For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

44.     Davis performed routine manual and technical labor duties that were largely dictated by Steward.

45.     Davis was not employed by Steward on a project-by-project basis.

46.     In fact, while Davis was classified as an independent contractor, he was regularly on call for Steward and was expected to drop everything and work whenever needed.

47.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for weeks at a time. Instead of paying them overtime, Steward paid the Putative Class Members a day-rate. Steward denied the Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

48.     Steward's policy of failing to pay its independent contractors, including Davis, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

49.     Because Davis (and Steward's other independent contractors) was misclassified as an independent contractor by Steward, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

50.     Steward's day-rate system violates the FLSA and NMMWA because Davis and the Putative Class Members did not receive any pay for hours worked over 40 hours each week.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

51.     Davis incorporates all previous paragraphs and alleges that the illegal pay practices Steward imposed on Davis were likewise imposed on the Putative Class Members.

52.     In addition to Davis, Steward employed other Putative Class Members who worked over forty hours per week with no overtime pay, were paid a day rate, and were misclassified as independent contractors. The Putative Class Members were subjected to the same unlawful policies which constitutes a willful violation of the FLSA. They are all entitled to overtime after 40 hours in a week and the overtime they are entitled to must be calculated in a manner consistent with the requirements of the FLSA and NMMWA. Davis and the members of the Putative Class are similarly situated in all relevant respects.

53.     Steward imposed a uniform practice or policy on Davis and all Putative Class Members regardless of any individualized factors.

54.     Steward's failure to pay wages and overtime compensation at the rates required by the FLSA and NMMWA result from generally applicable, systematic policy and/or practice which are not dependent on the personal circumstances of any member of the Putative Class.

55.     Davis' experiences are typical of the experiences of all Putative Class Members.

56.     Davis has no interest contrary to, or in conflict with, the members of the Putative Class Members. Like each member of the proposed classes, Davis has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

57.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

58.     Absent this action, many members of the FLSA Class and NMMWA Class likely will not obtain redress of their injuries and Steward will retain the proceeds of their violations of the FLSA and NMMWA.

59.     Furthermore, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

60.     The questions of law and facts common to each of the FLSA and NMMWA Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.      Whether Steward employed the FLSA and NMMWA Putative Class Members within the meaning of the FLSA and NMMWA;

b.      Whether Putative Class Members were exempt from overtime under the FLSA and/or NMMWA;

c.      Whether Steward's decision not to pay overtime to the Putative Class Members was made in good faith under the FLSA; and

d.      Whether Steward's violation of the FLSA was willful.

61.     Davis' claims are typical of the FLSA and NMMWA Class Members since both have sustained damages arising out of Steward's illegal and uniform employment pay policy.

62.     Davis knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

63.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

64.     The FLSA Class should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

**CAUSE OF ACTION**
**Violation of the FLSA and NMMWA**

65.     Davis incorporates the preceding paragraphs by reference.

66.     As set forth herein, Steward violated the FLSA and NMMWA by failing to pay Davis and the Putative Class Members overtime at one and one-half times the regular rate of pay under the hourly system, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a); NMSA § 50-4-22.

67.     At all relevant times, Steward has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

68.     The economic reality of their working relationship is that Steward employed Davis and each member of the Putative Class.

69.     Steward's pay policy denied Davis and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA and NMMWA.

70.     Steward owes Davis and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

71.     Steward knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Davis and the FLSA Class is willful.

72.     Due to Steward's FLSA and NMMWA violations, Davis and the Putative Class Members are entitled to recover from Steward their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

73.     The improper pay practices at issue were part of a continuing course of conduct, entitling Davis and the Putative Class Members to recover for all such violations, regardless of the date they occurred.

### JURY DEMAND

74.     Davis demands a trial by jury.

### RELIEF SOUGHT

75.     WHEREFORE, Davis prays for judgment against Steward as follows:

(a)     For an order allowing this action to proceed as a collective action and directing notice to the class;

(b)     For an order pursuant to section 16(b) of the FLSA finding Steward liable for unpaid back wages, and an equal amount of liquidated damages, due to Davis and the class members;

(c)     An order certifying class action(s) under F.R.C.P 23 for the purposes of the claims under New Mexico law;

(d)     For an order awarding Davis and the class members the costs of this action;

(e)     For an order awarding Davis and the class members their attorneys' fees;

(f)     For an order awarding Davis and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

(g)     For an order awarding Davis and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(h)     For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By:  */s/ Michael A. Josephson*
    Michael A. Josephson
    Texas Bar No. 24014780
    mjosephson@mybackwages.com
    Andrew W. Dunlap
    Texas Bar No. 24078444
    adunlap@mybackwages.com
    **JOSEPHSON DUNLAP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**